Camden County v. Union Carbide Good morning, Your Honors. May it please the Court, I'm Edward Bedard appearing on behalf of Camden County via its Board of Commissioners. Camden County, as the Court knows, is here to recover $2.64 million in taxpayer funds that were paid out under a contract whose underlying authorization was repealed by voters in a referendum. There's no dispute that the referendum's repeal of the Board resolutions affected the contract. Every court to look at the issue thus far has agreed. The trial court in Sweatt denied that the contract was unaffected. The Georgia Supreme Court confirmed that the referendum was constitutional, and the district court here agreed that the contract was affected as well. Even Union Carbide agrees. The only dispute, an issue of first impression, is voter activity. Correct, Your Honor. Laws ordinarily don't have a retrospective operation, right? That is correct, Your Honor, but I think the key word there is laws, and there's no law at issue here under both this Court's precedence and the Georgia Court of Appeals' precedence. The distinction between legislative and executive action is whether it's adopting a large policy that's applying in multiple situations. The Georgia Court of Appeals applied the rules of statutory construction to construe local resolutions. I'm sorry, Your Honor, I didn't quite hear the question. We looked at this as a matter of statutory interpretation. We looked at whether there's any kind of express terms that make clear the intent to apply retrospectively, and as I understand it, the Georgia Court of Appeals has applied the same kinds of rules to local resolutions. Well, I think it depends on, again, the resolutions themselves are going to take the same form because that's how boards of commissioners operate as multi-member boards. So whether they're acting in a legislative or an executive capacity, they're going to come out in resolutions. Did the Georgia Supreme Court in Camden County, so, you know, a case you're familiar with, specifically state that this was passed under the, quote, unquote, legislating powers of the noble amendment? Yes, Your Honor, I'd say two things to that. One, that case was obviously dealing with the home rule paragraph under the Georgia Constitution, not the contracts clause, and they are two separate things. The other thing I would say is if we're talking about, you're right, but if we're talking about the nature of the power, were they acting in a legislative capacity or an executive capacity? That's the argument you made to us. Yes. Certainly the Georgia Supreme Court in this very case, with this very referendum, stating that it was enacted as part of the legislating powers of both the people in repealing it and the county in passing it initially, then isn't that a pretty good indication of where these powers rest? Well, I think there's a couple different ways to look at it. And first off, I'll mark out at the beginning that if the contracts clause does apply here, then it also protects the government's rights under the contract, in which case Union Carbide would have breached by refusing to close it entirely. But here's where the contracts clause applies. I mean, just as a matter of interpretation, if it's not to amend retroactively and make something that was legal before now illegal retroactively, we don't even have to get to where there's a contracts clause problem if it doesn't apply retroactively. Well, the referendum, I think the plain text of the referendum, repeals the resolutions. The laws are repealed all the time. And when they are, it doesn't make illegal or legal what was previously legal or illegal. When it does, it takes the law off the books. Moving forward, it repeals the law. But I think it does that, Your Honor, because of the contracts and retroactivity clause of either the United States or Georgia constitutions. So if that does not apply, if there's not a law at issue here, then we need to view the word repeal in a different context, which is in the contracts context that we're talking about here. And I think the way to read it, if we read the home rule, which is that I don't think that there has to be a constitutional overlay. It's just a matter of how to interpret the reading. Is there a clear expression of intent to apply retrospectively? I don't see where there is. And even if there were, then I think you would run into the voluntary payments doctrine. Well, I'll answer maybe the second question first, which is I think the voluntary payments doctrine, if we're talking about a rescinded or voidable contract, doesn't apply. For example, in the minor contracting context, if you're contracting with a minor, the minor has the right under Georgia law to void the contract at any point until, I believe, his majority. And the voluntary payments doctrine has never been applied to the minor's right to get his money back. So if we're dealing with a voidable contract. There's nothing illegal or voidable or void about this contract when it was entered. And that's where I think we are maybe differing in our interpretation. I think the home rule paragraph, based on the interpretation that George Springport gave it in Sweatt, has given and has always given the people the right to void these actions, including contracts. And so that's built into the contract that's been a voidable contract. And I'll ask it a bit of a different way. I'm going to read to you the referendum. Which part indicates that it applies to the contract? I think that's the question the chief judge has asked you. Because if it doesn't, then we want to get to some of these subsidiary questions. Here's what it says. Here's the referendum. Tell me if I have it wrong. Shall resolutions of the Board of County Commissioners of Camden County, Georgia, authorizing the option contract with Union Carbide Corporation and Camden County's right and option to purchase the property described there and be repealed, right?  Which part of that is the contract? Repeal. I think the word repeal. And I would say the alternative option is, again, all it's doing is repealing. So if Congress passes a law that says marijuana is illegal, and then passes a law that says we're repealing that law, marijuana is legal, does that mean that all the crimes that were committed under the previous law don't exist anymore? I think we have the constitutional clause against retroactivity in the United States Constitution. I think absent that, and the purpose for that— The point is that laws are repealed all the time. They're repealed when we go forward. They're repealed for purposes of going forwardness, right? So it's like this law existed. It said someone could do this or couldn't do it. We're repealing the law. That doesn't mean what they did in the past is either good or bad. It just means that going forward, there's a new law. Well, then if that's the interpretation, Your Honor, and fair enough, this is an issue of first impression of the Georgia law, then what they're repealing is the resolutions. So if that doesn't have an effect, if the removal of the authorization, the initial authorization doesn't have an effect on the contract, then the contract's still in place. But all it does is repeal the authorization to enter into the contract, right? So that's what the resolutions were. They were authorizing the entrance into the contract. But you do have an effect going forward. In other words, in March of 2020—2022, I think it is— at that point going forward, it would have been ineffective. And that's pretty important because it's at that point that you then want to exercise the option, and you no longer have the ability to do that. So it does have an effect, right? Well, so our primary argument is that it does have an effect, but it affects it totally. I think the only other alternative is it doesn't affect it at all, in which case then the contract, because— Why can't it be what the Chief Judge has said, which is— It is prospective. It's only prospective. But it does have prospective application, and we know what that would be here. It would essentially nullify or undo your option starting in March 2022, which you— We saw an exercise. —no longer existed. Because the referendum itself does not actually affect the language of the contract. It's not a repeal of the contract. It's a repeal of the resolution authorizing the county to enter into the contract. And if you look at the Home Rule paragraph, the Home Rule paragraph does not authorize— The county's right and option to purchase the property. But I think that's descriptive of the resolutions. So if the resolution itself is being repealed, the resolutions— Purchasing the property is a description of what the agreement allowed, isn't it? It's a description of what the agreement allowed, but it's a description of— The description in the referendum is a description of the resolution. The resolution is being what's repealed. The resolution is authorizing the contract. If it's simply repealing the resolution, if that affects the contract at all, I think it affects it totally because the contract is now unauthorized. If it doesn't affect the contract, then the contract is in place. I don't think there's any way to read the actual repeal of the— Read the thing from the counterparty's perspective, right? So not your perspective, but from the counterparty's perspective. They've got a contract. They've given you the option. They don't—I mean, they do, I think, care about it, but they have no reason to necessarily care about whether you have the authority to enter into it or whatever. But then the public in the county has said, we don't want you to follow through with this contract. We don't want to build this thing. Why isn't that—like, the contract exists. You've got the option. You paid the money for the option. You've got the option. But the people in the county have said, you can't exercise that option. They've withdrawn the authority for your client to do anything under that contract. Why is that the way to look at this? Because I don't think textually that's what's going on either under the home rule paragraph. The home rule paragraph doesn't allow the people to just reject all actions. It says specifically they can repeal resolutions, ordinances, and I'm forgetting the third option there. And so what they've repealed here is the resolution authorizing the contract. That's what they had authority to do. If they exceeded that authority, then the referendum is invalid and the contract's unaffected. So there's—the people could not have put into the referendum, we are rejecting the contract, you can't do that because it's outside of the home rule paragraph. The only thing they could do was repeal the resolution authorizing it. And that's an authorization at the beginning. It doesn't continue to apply. The contract is either authorized or it's not. And I will, if the Court will allow me to preserve my time for a moment. Thank you, Your Honors. May it please the Court, Clay Massey for Union Carbide. Chief Judge Pryor, you hit the nail on the head. As a threshold matter without language in the legislation, that is the referendum here, making it retroactive, it cannot have any retroactive effect. That is established law. If you look at Bank of North Norman Park v. Colquitt County cited in our brief, it's 169 G.A. 534. The Supreme Court says the settled rule for the construction of statutes is not to give them retrospective operation unless the language so imperatively requires it. But it is because of the impairment of contract paragraph. In other words, what your opposing counsel is saying is the rule, the reason for that rule is because the Georgia Constitution has this provision which essentially as a default rule that laws should not be applied retroactively to impair the right to contract, right? I respectfully disagree. That's a matter of statutory interpretation and the rules for interpreting statute. You're clearly right that it's a matter of statutory interpretation, but that comes from somewhere. And the reason for that is that the Georgia Constitution says that laws should not be applied retroactively. That's where this is coming from. Well, I agree that that's what the laws say, but also before you get to that constitutional issue, it is purely a matter of statutory construction looking at any law. What is the nature of legislative power and judicial power? The legislative power ordinarily operates prospectively, structurally, that that's the assumption of how we read laws. That's exactly right. Is there anything more fundamental than that? Isn't there a Georgia statute that says that laws ordinarily don't have a retroactive operation? Aren't there lots of cases that just say it's a matter of statutory interpretation unless there's an express? And they don't depend in any way on contract situations or anything of the kind that say we don't read statutes unless there's a clear expression as applying retroactively. That's right, Your Honor. It's Georgia Code Section 1-3-5, which they completely ignore in their briefs. And that statute says laws prescribed only for the future. They cannot impair the obligation of contracts nor ordinarily have a retrospective operation. So that's a statutory command before you even get to the contract. So what does repeal mean? You heard me read the ordinance. What does repeal mean? Repeal means that as of that time, with respect to what happened here and the authority to go forward with the contract, the voters repealed the authority to proceed with the acquisition of the property and the exercise of the option. Your opposing counsel goes through a textual analysis of what the term repeal generally means. And it seems to generally mean a little bit more than you just said. In other words, if I picked up Black's Law, it would tell me a little bit more than you just articulated, right? It could, but there, as we've just discussed, in terms of statutory construction and also the constitutional and statutory prohibition against applying it retroactively. This isn't quite a statutory interpretation case. This is what was originally understood by the voters of Camden County at the time that they enacted this. Because if it applies retroactively, then we have to go and look at the constitutional provision and all of that stuff. And I think you may win on that too, but that's a separate point. They're making the primary point that this has to apply retroactively because it's targeted to the ordinance. It can only be targeted to the ordinance because the home rule only allows repeal of ordinances, resolutions, and such. And it has to be applied retroactively to take that authority away from secession, thereby voiding everything there. That's the argument they're making. Why is that argument wrong as a matter of just what this resolution was aiming to do? Well, what the resolution was aiming to do was to prevent the county commission from proceeding with the acquisition of the property. If you look at the pleadings and everything that was happening here, the voter population did not want to go forward with the construction of this spaceport or the use of the property. Let's say there had been no referendum. County commissions adopt and repeal resolutions all the time, don't they? They do. And when they repeal resolutions, they don't ordinarily operate retrospectively, right? That's correct. They're just repealing that resolution going forward, right? That's exactly right, Your Honor. To the extent that the voters exercise that legislative power, a power that the county commission exercises all the time, that they exercise that for the county, why would we view their exercise of that legislative power any different from how we would view it if the county commission had done it? And, of course, you shouldn't, Your Honor. So there's different kinds of laws, right? So if the law is the county commission passes a law which says you can't have more than five chickens living in your house, and if that's repealed, that is certainly irrespective. At that point, no more five chickens. You can't prosecute someone for having the five chickens before the resolution had been repealed, right? This is a contract, and the resolution was an authorization to enter into a contract. If you're repealing that authorization, doesn't that necessarily go to the act when it actually happened as opposed to what's going on right today? I mean, it's been entered into for five years. Well, if you look at the Busbee decision, which a Georgia Supreme Court decision which we discussed in our brief, that's where there was a repeal and amendment of an appropriation statute that had allocated funds to the teachers. So the repeal of Busbee, and I've read the case. I'm familiar with it. The repeal of Busbee, though, didn't say we repeal the authorization for the Georgia State University system to enter into raises with professors, which would be the analogous situation to here. Here, the resolution that the people of Camden County voted for and approved said we're repealing the authorization to enter into the resolution for this contract that was entered into. I'm paraphrasing. Even if you could interpret the referendum that way? I've interpreted it that way. I've read it that way. The contracts clause says that you cannot enact a law to impair contracts. That is instrumental in this. I do agree that before that, you have a statutory interpretation rule that precludes what they are arguing, but they ultimately run into the contracts clause. They ultimately run into OCGA 1-3-5. The statute and the contracts clause. Because as of the time that the payments were made, which is what they're trying to get back, we had a legal contract. The law in Georgia is where there exists a legal contract. There cannot be an adjust in Richmond when money hadn't received. The primary one and the one that we talked about most was this is not a law. This was not a law that was passed. So the contracts clause, as you know, says no law shall. And so they're saying this wasn't a law, so there is no impairment. I think that they're looking at the wrong event, Judge. First of all, that resolution was a law because it was a matter of policy and whether they were going forward with a purchasing property to construct a spaceport in the county. And it's because of the legislative power according to the Georgia Supreme Court. Absolutely. In addition, they are looking at the wrong event. What the contracts clause is looking at is the event that is retroactively impairing, the government action that's retroactively impairing a right or a contract, whether that is legislative versus administrative. If you look at every decision that they cite on this issue, and most of the decisions they cite on this issue are just legislative immunity cases that have no bearing on this issue at all. If you look at the cases that deal with this, they look at the government action that is impairing the contract. The government action that's being applied retroactively. That here is the referendum. And the referendum is clearly legislative. In the cases in the City of Eastlake versus Four City Enterprises, the United States Supreme Court at 426 U.S. 663 said that a referendum, of course, is, quote, a means for direct political participation, allowing the people the final decision amounting to a veto power over enactments of representative bodies, the practice is designed to give citizens a vote or a voice on questions of public policy. And then Kemp versus City of Claxton, it's the Georgia Supreme Court decision at 269 GA 173, said that a referendum, this was an interpretation of the corollary for cities to the home rule provision. The court said a referendum on ordinances and resolutions would be, quote, exercising legislative power. The act that matters here with respect to the contracts clause is the referendum. It's not the resolutions that they're arguing. The referendum was clearly legislative, and their argument is misplaced and wrong. In addition, they make this argument about vesting. Okay? What those cases say, if you look at, I mean, if you read those cases, if you look at Pritchard versus Savannah Street, Murray County School District, and the City of Waycross, those cases, what those cases say is that a party with a contract lacks a vested right in the contract terms only if the contract terms themselves say that it is subject to modification. It seems that under Georgia law, it's not unreasonable to suggest that some sort of background legal principles are in play when you adopt a contract. In other words, when you adopt a contract, you adopt the law as it exists at the time. And their point is that has to include the power to repeal the authorization for this contract. Well, I think what they're arguing is a stretch beyond what the law recognizes. If you look at Pritchard and these cases, what they were dealing with, there was a statute involved there because a prior Georgia Supreme Court decision in the 1930s had ruled that the statute creating the employment retirement plans were basically considered enforceable terms of the government employment contracts. So there, the enabling act, right, the creation of the employment retirement plans, was incorporated into the employment contracts. And what the court said, if you look at Murray County School District, said, quote, whereas in Pritchard and Pulliam, the contract terms themselves provided for the subsequent amendment, modification, or termination, the employee never obtained a property right and unchanged benefits. The government's right to revoke or amend a contract has to be in the contract itself or like in those cases, which are very particular with respect to the creation of employment benefit plans, in the enabling legislation. Here, the resolutions, if we interpret, which we should, that the resolutions are incorporated into the contract, as Judge Wood recognized. What if the Georgia Constitution or the Home Rule Paragraph had a provision which said every contract that's entered into by a county with any private entity is subject to repeal by the people through referendum and a regular contract is entered into without specific reference to that paragraph? Would that be sufficient savings clause to then put the parties on notice that it could be repealed? I do think that still goes beyond what these cases have said about incorporating terms into the contract. Such a general law like that that's not specific to the contract or the subject matter of that contract, I think, goes beyond what the law has recognized. Even though the law specifically says that it can be repealed, even if it could be repealed retroactively, let's assume the law says. Despite, notwithstanding what we said in the contract laws, it could be repealed retroactively. The people can repeal any contract entered into between a county and a private party retroactively. I am aware of no case that has recognized that that sort of circumstance would make the contracts clause not applicable or that the contract itself is basically voidable at any point. I mean, obviously, that would create some significant problems for government contractors. But to answer your question, I don't think the law goes that far. Well, let me get back to the first principles. We don't even get to a constitutional question, do we? Unless there's a clear indication in the text that it is to have the retrospective application that the county urges. And it seems to me what they're asking us to say is that it's clear from this referendum that the people of the county are not only repealing the authority of the county to purchase and to exercise its option under the contract, but they're making the contract itself void of amnesty. And the earlier payments made under that contract are illegal, even though there's nothing about that in the referendum. That's exactly right, Your Honor. If it doesn't operate clearly to do that, if there's not a clear expression of intent to do that, then we're at the end of the inquiry, aren't we? Correct. Your Honor, what we have here... So there was originally a breach of contract claim brought against you by the county. Because when they tried to exercise their option, you refused to sell the property to them. If we interpret all of this the way you're suggesting that we should interpret it, why can't they bring a breach of contract claim against you still? At the time that they tried to exercise their option under a valid contract that you had agreed to, you refused to follow through with your obligation to sell them the property? For a few reasons, Your Honor. One, through the referendum, they effectively terminated the contract prospectively. That's their problem, I guess. I guess I'm trying to figure out why you can say to them, you want to exercise your option, we're not going to let you do it because we don't think you want to. That's basically what you're saying. You're saying you need the referendum to say that you don't want to exercise your option anymore, and the county commission is saying, no, we do want to exercise our option. Why didn't you have an obligation to just go through with that? Well, that's because there was an option period that terminated that ended on April 13, 2022. At that time, the voter referendum had rescinded or repealed their authority to go forward with the transaction. The referendum passed. It passed. Absolutely, Your Honor. And they had no authority to go forward with it. I'm trying to figure out why you get to deny them the right to exercise their option because you don't think they have authority to do it. Did the contract say anything about a referendum or like proof of county's authority, anything like that? I thought the contract just said, we're giving you an option to buy this property if you exercise it within this period, and then they exercise it within the period that was provided for them by the contract. But, Your Honor, they didn't exercise it within the period because they had no authority to go forward with that. Who said they had no authority? It was within the period of the contract, though, right? They sent us a letter that purportedly exercised the option, but at that same time, the voter referendum was on the books. No court had repealed their authority to exercise it. Exactly, Your Honor. Once again, I guess I'm just trying to figure out why that matters to you as the counterparty. I could see a citizen, for example, suing the county and saying, you're wrong, you didn't have the authority to do this, I voted this referendum, et cetera. But that's between the county, the people in the county, whatever. You're just the person that's got the money in exchange for the property. Why wasn't that a breach of your contract obligations when they tried to exercise the option? Because here's the situation that would create. It would create the situation in the Burke and Howard cases that are distinguishable from the cases it currently stands. If we had gone forward with the closing and taken the county's money, then we would have been sued for money hadn't received because they had no authority to pay us that money. We couldn't close. It's like somebody walks in the door and says, I want to exercise the authority of Joe Smith under the contract, and they're not Joe Smith.  Right. The voters have said the county commission can't do this, doesn't have the authority to do this. That's exactly right. They had no authority to move forward with the closing, and at that point we can't do a deal with someone who doesn't have the authority to do the deal. Thank you, Your Honors. Thank you, Your Honors. I just want to cover a few quick points starting with there was a resolution, I think, of 53-7 within the option period post-repeal from the Board of Commissioners to exercise the option, and so I think that happened within the option period. Two, Mr. Massey said that there's no ex- Post-repeal. It is post-repeal, but it's a, yes, exactly, Your Honor. The next thing is Mr. Massey said that he wasn't aware of any cases in which the law had been read into a contract like that. I think all those reserve clause cases that we cited, too, are exactly that. So let me bring up Busbee because Busbee seems to have rejected the very argument you're making, a very similar one. So there, the argument made by those that were seeking to challenge the contract with the professors said, hey, when they enter into these contracts, they know this is an appropriation. They know that until the money is in your pocket, the legislature can come in and deappropriate at any time, and that power is in the Constitution, and that is an inherent principle that's underneath the contract. And the Georgia Supreme Court essentially said that is a non-starter for that because otherwise it would impinge upon the right to contract, which it otherwise can't do because there, there was a contract that vested the rights to the increased salary at that point. If the Georgia Supreme Court rejected that argument, how are we to accept it here? Well, again, I think Busbee is just completely distinguishable because that was legislation then effecting specific contracts. Well, if you have a legislation mark, then you agree with that. Well, I would say if there's legislation, if the Contracts Clause applies, and this goes to my next point, if the Contracts Clause applies, it also protects the government. So the government's rights, in this case Camden County's rights, under the contract given the text and history of the Contracts Clause in Georgia are protected. And I'll say just off the top they cited one case, Bass, from the 1940s. I think it's important to note that that was an equally divided court on that issue. So there is no precedent on this issue. I think the court would have to go to the text and history of the Georgia Contracts Clause on that. I'm having trouble understanding that argument because if everyone agrees that the referendum has some effect, which, again, you started off by talking about what everyone agrees with. We all agree it passed. We all agree it has some effect. We all agree the contract initially was valid when it was entered into. The only question, I think the Chief Judge went right to it, is retroactivity, and you said yes. So if you question retroactivity and we disagree with you and determine for whatever reason either as a matter of interpreting the resolution or as a constitutional matter it's not retroactive under the Contracts Clause, how do you win? Well, I think the only yes, it is assumed, but I think the reason why it doesn't operate prospectively according to the district court's analysis is because of the Contracts Clause and that retroactivity. And I do want to address Judge Pryor's statutory interpretation question here in a second. Yes. So I think the reason why the district court reaches it is because of that Contracts Clause. If it protects the government too, then also the government's rights under the contract are unaffected. And so the government can exercise its option rights. The contract is unaffected moving prospectively. I think on the statutory interpretation point, we have to go again to what is the referendum doing. It's repealing the resolution which is authorizing the contract, and that is the full extent of the people's authority under the Home Rule Paragraph. They can only repeal the resolution. So then the question is what is the effect of a post-time repeal of a resolution authorizing a contract. It either takes away the authority for the contract entirely or it doesn't affect the contract at all because the contract is already entered into, executed. You can take away the authority for the contract prospectively so that then you cannot exercise the option. But I think there's no example I'm aware of under Georgia law where once the contract is entered into, it only repeals the official's ability to move forward with it. If the contract is in place, then they can continue to act. And again, then we would get into the Contracts Clause and all that, protecting also the government's rights for the option not only to have the property off the market, but for the right to purchase it. It did, but it paid for the entirety of that period for the option and the right to purchase. The right to purchase is inherent in what they paid for. So again, I think there's no, the only two circumstances are either the contract is affected totally and everybody goes back, maybe pursuant to some equitable weighing, or the contract is unaffected, in which case then Union Carbide's in breach. And that's where we're at. Because the clear terms of the contract allow for Union Carbide to, or for the county to receive all of its money back if Union Carbide refuses to close. So unless the panel has any other questions, we'll rest here. Thank you, Ron.